# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2379

_____

| | | |
|---|---|---|
| Motion Control Corporation, | * | |
| | * | |
| Petitioner-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| SICK, Inc., | * | |
| | * | |
| Respondent-Appellee. | * | |

_____

Submitted:  November 20, 2003

Filed: December 30, 2003

_____

Before MURPHY, LAY, and BRIGHT, Circuit Judges.

_____

LAY, Circuit Judge.

Motion Control Corporation ("MCC") appeals the district court's decision allowing removal of MCC's Minnesota state law claim.  The district court based its removal decision on the grounds that the claim was "factually interdependent" with, and therefore "ancillary" to, a case already pending before the federal district court. We hold that 28 U.S.C. § 1441 does not allow removal under these circumstances, and therefore vacate the district court's decision with directions to the district court to remand the case to the Minnesota state court.

## I. BACKGROUND

MCC, a Michigan corporation, is a distributor of automotive products and other products. SICK, Inc. ("SICK"), a Minnesota corporation, is a manufacturer of a wide-range of products. In 1998, MCC and SICK entered into a distribution agreement (the "contract") under which MCC would be the exclusive distributor of SICK products in Michigan. The contract was limited to one year, but would extend automatically unless either party gave ninety-days written notice. It also provided, however, that SICK could not terminate the contract so long as MCC continued to meet certain distributor requirements set forth in the contract. If SICK sought to terminate on the basis that MCC was not performing under the contract, the question of MCC's performance was subject to binding arbitration in Minneapolis, Minnesota, to be governed by Minnesota law. Section 17 of the contract provides that it is to be construed and governed by the laws of the State of Minnesota and that the parties "submit to and limit litigation concerning this Agreement to the jurisdiction and venue of the courts of the State of Minnesota." (J.A. at 40) (emphasis added).

Unhappy with the exclusive distributorship agreement, on September 28, 2000, SICK notified MCC of its intention to terminate the contract due to deficiencies in MCC's performance. MCC demanded arbitration, as provided in the contract. On August 2, 2001, the state arbitration panel found that while there were some problems with MCC's performance, SICK had failed to give proper notice to MCC under the contract in order to give MCC an opportunity to cure those deficiencies. Thus, the arbitration panel held the contract was not terminated.[1]

---

[1]MCC submitted the first arbitration award to the Minnesota state court for confirmation. Confirmation was ordered on December 13, 2001, by Hennepin County District Court Judge Bruce Peterson. The order provided that the Court Administrator was directed to enter judgment pursuant to the arbitration award by docketing the judgment in Hennepin County, Minnesota.

Thereafter, on August 16, 2001, SICK filed a diversity suit against MCC in United States District Court for the District of Minnesota. SICK claimed, *inter alia*,[2] that MCC breached the contract by selling competitor's products through its "shell company," Commerce Industrial Controls, Inc. In the meantime, the parties agreed to undergo a second arbitration.[3] On April 1, 2002, the arbitrator held that the contract had not been terminated and would remain in force and effect for two more years, until March 31, 2004.

MCC maintained that by imposing a March 31, 2004, termination date on the contract, Arbitrator Solum had ruled on a matter that was not submitted to him, had violated the terms of the contract, and had exceeded his authority. MCC served an application to modify, clarify, and correct the award of the arbitrator and SICK responded. On May 6, 2002, Arbitrator Solum denied MCC's application for modification.

Displeased with the result reached by the arbitrator, on June 28, 2002, MCC filed suit in Minnesota state court, pursuant to Minn. Stat. § 572.20, seeking an order to either modify or vacate the second arbitration award. In response, SICK filed notice to remove MCC's state court action to the United States District Court for the District of Minnesota. On July 18, 2002, the removed case was assigned to the district judge before whom SICK's original lawsuit was still pending. The district

---

[2]SICK included claims of tortious interference with contractual relations, breach of fiduciary duty, unjust enrichment, and breach of the covenants of good faith and fair dealing. MCC counterclaimed for breach of contract and breach of fiduciary duty.

[3]No motion to compel arbitration was ever presented to the federal district court. The district court did not order arbitration or stay SICK's action pending the parties' arbitration. Instead, it would appear the arbitration and SICK's action proceeded concurrently.

judge did not join or consolidate the cases, but treated them as independent actions.[4] MCC moved to remand the removed state court action, asserting that removal was not proper under 28 U.S.C. § 1441. It argued that, under § 1441(b), a defendant may not remove an action to the federal district court on the basis of diversity if any of the defendants are a citizen of the state where the action is filed. Here, SICK is a citizen of Minnesota and the action was brought in the Minnesota state court.[5]

Notwithstanding § 1441(b), the district court held that removal was proper under the doctrine of "ancillary jurisdiction." Quoting <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 378 (1994), it explained that the doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." <u>Id.</u> The district court found that because MCC's state court action and SICK's original action were "factually interdependent," it therefore "ha[d] ancillary jurisdiction over this action and . . . it was properly removed."

---

[4]If the district court had joined the removed case with SICK's breach of contract case, then MCC potentially would have the additional problem of an invalid interlocutory appeal, given that SICK's breach of contract claims were still pending and there was no certification by the district court to allow a separate appeal of the removal. As it stands, however, both parties and the district court have always treated the two cases as independent actions. The two actions were given separate docket numbers, and the district court chose not to join or even consolidate the state court case with the federal suit brought by SICK. Instead, the district court entered an order asserting jurisdiction and denying MCC modification or vacation of the arbitration award. This constituted a final decision, and MCC's separate appeal is therefore proper. <u>See</u> 28 U.S.C. § 1291.

[5]Although we need not decide, we seriously question whether the federal district court would have jurisdiction to review the state arbitration award when the parties have stipulated that the state court is to be given jurisdiction to review the award, and the Minnesota Statutes specifically authorize such review. <u>See</u> Minn. Stat. § 572.20. To this court's knowledge, neither party attempted in the federal district court to invoke arbitration under the Federal Arbitration Act, 9 U.S.C. § 3.

-4-

Having determined that it had jurisdiction, the district court denied MCC's motion to modify or vacate the arbitration award. This appeal followed.

## II. ANALYSIS

We review a district court's exercise of removal jurisdiction and the denial of a motion to remand *de novo*. See United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001). 28 U.S.C. § 1441 governs the removal of actions from a state court to a federal district court, and provides in relevant part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. <u>Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought</u>.

28 U.S.C. § 1441 (emphasis added).

The district court acknowledged that if its jurisdiction rested solely on the basis of diversity, § 1441(b) would prohibit removal of MCC's Minnesota state court case because SICK is a citizen of Minnesota and was properly named and served as a defendant[6] in MCC's case. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996);

_____

[6]SICK suggests that we "realign the parties according to their true interests," but realignment would not be appropriate under these circumstances. See Pub. Serv.

<u>Hurt v. Dow Chem. Co.</u>, 963 F.2d 1142, 1145 (8th Cir. 1992). The district court reasoned, however, that § 1441(b) did not bar removal because the "removal was not based solely on diversity," but was also based on the doctrine of ancillary jurisdiction. We must respectfully disagree.

First, ancillary jurisdiction does not provide an independent source of removal separate from § 1441. In 1990, Congress consolidated and codified the common law doctrines of ancillary and pendant jurisdiction under the title "Supplemental jurisdiction," in 28 U.S.C. § 1367. <u>See</u> <u>Willman v. Heartland Hosp. E.</u>, 34 F.3d 605, 613 (8th Cir. 1994), <u>cert. denied</u>, 514 U.S. 1018 (1995). Section 1367(a) does not mention removal at all. It provides in relevant part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). While this statute does allow factually related state law claims to be joined with the claim over which the federal district court has original jurisdiction, it plainly does not provide a separate basis for removal of independent state law actions. <u>See</u> <u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 34 (2002) ("Removal is governed by statute, and invocation of ancillary jurisdiction . . . does not dispense with the need for compliance with statutory requirements [for removal].");  <u>see also</u> <u>In re Estate of Tabas</u>, 879 F. Supp. 464, 467 (E.D. Pa. 1995) ("[T]he supplemental jurisdiction statute does not allow a party to remove an

---

<u>Comm'n of Utah v. Wycoff Co., Inc.</u>, 344 U.S. 237, 248 (1952) (holding that courts may realign the parties where a declaratory plaintiff seeks, in effect, to establish a defense against a cause of action which the declaratory defendant might assert in state court). The parties are aligned according to their true interests here, given the nature of MCC's claim for vacation or modification of the arbitration award.

otherwise unremovable action to federal court for consolidation with a related federal action," even if "such an approach would have the benefits of efficiency . . . .").

Second, ancillary jurisdiction does not authorize removal under § 1441. Section 1441(a) provides that removal is only proper where the federal district court has "original jurisdiction" over the state court case. Ancillary jurisdiction is not original jurisdiction, as the Supreme Court has recently explained. See Syngenta, 537 U.S. at 34 ("Ancillary jurisdiction . . . cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441."); see also Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 456 (6th Cir. 1996) ("The supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute, even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction. . . .") (citations omitted); Brown v. Prudential Ins. Co. of Am., 954 F. Supp. 1582, 1584 (S.D. Ga. 1997) (holding that supplemental jurisdiction does not provide the original jurisdiction necessary for removal under § 1441); Holt v. Lockheed Support Sys., Inc., 835 F. Supp. 325, 329 (W.D. La. 1993) (same); 29A Federal Procedure: Lawyers Edition, § 69:2, at 10 (1998) ("The original jurisdiction requirement is an absolute and nonwaivable prerequisite to removal jurisdiction. A District Court is not endowed with jurisdiction to hear a case on removal merely because . . . a related case is pending in the federal court.") (footnote omitted); 16 James Wm. Moore et al., Moore's Federal Practice ¶ 107.14[1] (3d ed. 1999) ("The supplemental jurisdiction statute is not itself a source of original jurisdiction and therefore is not a proper basis for removal.") (footnote omitted). Therefore, because ancillary jurisdiction does not provide an independent basis for removal or authorize removal under § 1441, and because the district court's diversity jurisdiction did not permit removal due to the prohibition of § 1441(b), we hold removal was improper.

## III. CONCLUSION

For the reasons stated above, 28 U.S.C. § 1441 prohibits removal of MCC's state court action to federal district court. The district court therefore did not have the jurisdiction to reach the merits of MCC's claim for modification or vacation of the arbitration award. Accordingly, we VACATE the judgment of the district court with directions to the district court to REMAND the action to the Minnesota state court from which it was removed.

_____